# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2079 | **DATE** | 5/12/2003 |
| **CASE TITLE** | Oncology Therapeutics Network vs. Olympia Fields Internal Medicine Associates et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#16] against Defendant Olympia Fields Internal Medicine Associates, S.C. d/b/a Horizon Healthcare Associates, S.C., is **granted**. Judgment is entered in the amount of $121,490.96. *A-K*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 3 | | **Document Number:** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | MAY 1 3 2003 | | 40 |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | AK docketing deputy initials | |
| | Mail AO 450 form. | | | 5/12/2003 | | |
| | Copy to judge/magistrate judge. | | U.S. DISTRICT COURT | date mailed notice | | |
| FT/*Accy* courtroom deputy's initials | | | | FT | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

| | | |
|---|---|---|
| ONCOLOGY THERAPEUTICS NETWORK JOINT VENTURE, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 01 C 2079 |
| OLYMPIA FIELDS INTERNAL MEDICINE ASSOCIATES, S.C. (INC.) d/b/a HORIZON HEALTHCARE ASSOCIATES, S.C. and OLYMPIA FIELDS EYECARE, LTD., | ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) ) | |

DOCKETED
MAY 1 3 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Oncology Therapeutics Network Joint Venture, L.P.
("Oncology"), moves this Court for Summary Judgment, pursuant to
Rule 56(c) of the Federal Rules of Civil Procedure.  Defendant
Olympia Fields Eyecare, Ltd. ("Eyecare") has filed a Motion to
Dismiss, which the Court will address in a separate order.  For
the reasons set forth below, the Court grants Plaintiff's Motion
for Summary Judgment against defendant Olympia Fields Internal
Medicine Associates, S.C. d/b/a Horizon Healthcare Associates,
S.C. ("OFIMA"), under the theory of account stated.

### FACTS

Oncology is a Delaware limited partnership, based in
California, that manufactures and sells pharmaceuticals used in
the treatment of cancer.  (Plaintiff's Memo at 1.) OFIMA is a
general medical practice with its principal place of business in

Illinois, at 2605 West Lincoln Highway in Olympia Fields.
(OFIMA's Resp. at 2.)  Eyecare is an ophthalmology medical
practice with its principal place of business in Illinois,
located at 2555 West Lincoln Highway in Olympia Fields.
(Oncology's Statement of Facts at 2.)

Oncology claims that OFIMA and Eyecare failed to pay for
pharmaceuticals ordered by and delivered to OFIMA.  Oncology
presents twenty-three invoices for merchandise that it has
shipped, but for which it has not received payment in full, as
well as seven invoices for finance charges related to the unpaid
invoices.[1]  (Mot. Sum. J. Ex. 2.)  Each of these invoices states
that the customer is "Olympia Fields Internal Med.," and lists
the customer's address as "2605 W. Lincoln Hwy. #130" in Olympia
Fields, Illinois.  (Id.)  The invoices for merchandise total
$135,401.95, and the invoices for finance charges total
$9,765.85.[2]  (Id.)

OFIMA acknowledges that it ordered merchandise from
Oncology, that it accepted merchandise from Oncology, and that it

_____

[1] Oncology states that there are thirty-one invoices at issue.
(Bennett Aff. at ¶ 3).  However, the Court finds only thirty
invoices in the parties' submissions.  (Mot. Sum. J. Ex. 2.)

[2] Plaintiff has submitted its invoices in such a way that the last
digit(s) on many of the amounts due are not legible. As such, the
final award could be off by an amount that would not exceed
$0.900.

received invoices from Oncology for the merchandise and the finance charges. (OFIMA Answer at 5, 6.) Further, OFIMA has paid $15,842.54 towards the merchandise balance. Also, OFIMA has introduced rebate vouchers for $6,829.64, which OFIMA states were issued by Oncology toward the outstanding merchandise balance. The evidence also indicates that Oncology and OFIMA attempted to resolve this dispute by agreeing to a payment plan, which, apparently, was unsuccessful.

Nevertheless, the evidence clearly demonstrates that OFIMA has never entered into a written contract with Oncology. (Reply to Statement of Add'l Uncontested Facts at 2; Jennetten Aff. at ¶ 4.) Oncology admits as much, but bases its contract claim upon the contract it has with Eyecare. Eyecare entered into a written credit contract with Oncology in March 1995. (Am. Compl. Ex. 1.) This contract stipulated that Eyecare would incur a finance charge on invoices that were more than seventy-five days past due at a rate of twelve percent per annum, and that, in the event of default by Eyecare, Oncology would be entitled to reasonable attorney's fees and collection costs. (*Id.*) This agreement listed Eyecare's address as "2555 W. Lincoln Hwy.," and was signed by Eyecare's president, Sharon Burke. (*Id.*)

Eyecare concedes that it entered into a contract with Oncology, but denies ordering any goods from Oncology and denies

that it and OFIMA are related business entities.  OFIMA and Eyecare have each introduced affidavits that state that they have no common ownership, no common business, no common employees, and no common shareholders, directors, or officers (Jennetten Aff. at ¶ 3; Burke Aff. at ¶ 4.)  Further, Sharon Burke, M.D., president of Eyecare and signatory to the contract, is not an owner, employee, or agent of OFIMA.  (Id. at ¶ 6.)

## STANDARD OF REVIEW

The Court will grant summary judgment only if the pleadings and supporting documents show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (2003). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party initially bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court will "construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999).

To survive summary judgment, the non-moving party must present evidence that creates more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, "mere conclusory" allegations are inadequate. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party will not survive summary judgment if it cannot present sufficient evidence to support each element of its case on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Under Local Rule 56.1, the party moving for summary judgment must submit a statement of material facts, written in short numbered paragraphs with citations to admissible evidence. *Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003). The opposing party must respond to each paragraph by either admitting or denying the allegations and specifically citing to supporting materials showing that there is a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The opposing party may file a statement of additional facts that would defeat summary judgment, using the same form of numbered paragraphs with supporting citations. Loc. R. 56.1(b)(3)(B). Finally, the moving party may file a reply to any additional facts submitted by the opposing party. Loc. R. 56.1(a).

In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Once properly supported, "all material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." Loc. R. 56.1(b)(3)(B). Similarly, all material facts properly supported in the opposing party's Rule 56.1(b)(3)(B) statement "will be deemed admitted unless controverted by the (reply) statement of the moving party." Loc. R. 56.1(a). Failing to support one's statement with a citation to the record is equivalent to an admission of the other party's factual assertions. *Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir. 1999).

Finally, to succeed on a motion for summary judgment, the plaintiff must present admissible evidence to support the claim. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). "[H]earsay evidence is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997).

Oncology raises several alternate theories of liability against OFIMA. First, Oncology asserts that OFIMA is in breach of contract, and that, under the terms of this contract, Oncology is entitled to interest charges and collection fees in addition to the amount owed for merchandise. Next, and alternatively, Oncology contends that it is entitled to recover under quasi-contractual or implied-in-law theories of recovery; specifically, under theories of unjust enrichment and quantum meruit. Oncology further requests that the Court permit Oncology to recover under the theory of account stated, because the parties mutually assented to the terms of the sales represented by the invoices. Neither party disputes that OFIMA ordered and received the merchandise from Oncology, and that, therefore, OFIMA is liable to Oncology. Instead, the parties dispute the amount of this liability[3].

## 1. Breach of Contract

To recover under a breach of contract theory, Oncology must first demonstrate the existence of a valid, enforceable contract. *Kellers Systems, Inc. v. Transport Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 997 (N.D. Ill. 2001). An enforceable contract requires

---

[3] The substantive law of Illinois applies to this case, because the case was brought in a federal district court in Illinois pursuant to this Court's diversity jurisdiction. *ECHO, Inc. v. Whitson, Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995).

both "a sufficiently concrete expression of the essential terms of the agreement" and a manifestation of intent to be bound by that agreement. *Ocean Atlantic Development Corp. v. Aurora Christian Schools, Inc.*, 322 F.3d 983, 995 (7th Cir. 2003). Such an agreement must be premised on the mutual assent of both parties to the terms of the contract, or in other words, the parties must have had "a meeting of the minds." *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991). The obligations of a contract cannot be enforced against an entity that is not a party to the contract. *Fararo v. Sink, LLC*, NO. 01 C 6956-57, 2002 WL 31687671, at *6 (N.D. Ill. Nov. 27, 2002). Furthermore, in Illinois, contracts for the sale of goods in excess of $500 must be in writing. 810 ILL. COMP. STAT. § 5/2-201 (West 2003); *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289 (7th Cir. 2002)(discussing the Illinois Statute of Frauds.)

In the case at bar, Oncology has not introduced any admissible evidence to support the existence of a contract with OFIMA that governs the sale of the merchandise at issue. Rather, Oncology has introduced evidence of a contract that it entered into with Eyecare. This contract was entered into by Sharon Burke, president of Eyecare, and listed Eyecare's business address. This contract does not, however, contain any reference to OFIMA, does not name any employees or owners of OFIMA, and does not list OFIMA's business address. Further, Oncology has

not introduced any evidence of a privity relationship between OFIMA and Eyecare.

Instead, Oncology has introduced a statement made by Laura Bennett, Financial Services Manager for Oncology, that "I was informed that [OFIMA] had assumed all of the obligations of Eyecare." (Bennett Aff. Dec. 11, 2002 at ¶ 7.) Since this statement is offered as an attempt to prove that OFIMA did, in fact, assume Eyecare's obligations, it is inadmissible hearsay and may not be used to support Oncology's position. FED. R. EVID. 801. If Oncology had direct, admissible evidence indicating that OFIMA did assume Eyecare's obligations, it was obligated to produce this evidence in support of its motion for summary judgment. *Caisse Nationale de credit Agricole v. CBI Industries, Inc.* 90 F.3d 1264, 1270 (7th Cir. 1996) (parties must "wheel out all [of their] artillery " at the summary judgment stage.)

Oncology attempts to rely upon indirect evidence to establish the necessary privity between OFIMA and Eyecare. Ms. Bennett's affidavit states that OFIMA "made payments against the outstanding balance under Eyecare's accounts and ordered more goods under that account." (Bennett Aff. Dec. 11, 2002 at ¶ 7.) However, Eyecare has submitted an affidavit, uncontested by Oncology, demonstrating that, although it had a purchase agreement with Oncology, Eyecare never actually purchased merchandise from Oncology and, therefore, had no outstanding

9

balance for OFIMA to assume.  Oncology does not attempt to dispute this.  Under these circumstances, Ms. Bennett's affidavit merely raises an inference that Oncology improperly attributed OFIMA's purchase orders to Eyecare's accounts.

Because there is no evidentiary support for Oncology's claim that OFIMA assumed liability for Eyecare's contracts generally, or the Eyecare/Oncology account specifically,[4] the Court denies Plaintiff's Motion for Summary Judgment on Count I of its First Amended Complaint.

## 2. Quasi-Contractual Theories

A quasi-contractual relationship may be implied in the absence of an express contract between the parties under the theories of unjust enrichment and quantum meruit.  *Ahn v. Midway Mfg. Co.*, 965 F. Supp. 1134, 1140 (N.D. Ill. 1997).  These are

---

[4] The Court notes that each of the invoices at issue list the customer's name as OFIMA, give OFIMA's address as the billing address, and state "Customer No. 002346."  The credit agreement between Eyecare and Oncology also has the number "002346" handwritten across the top.  The fact that the same number is used on each of these documents is consistent with Ms. Bennett's statement that OFIMA ordered merchandise under Eyecare's account. However, there has not been any evidence submitted to show that OFIMA intended to be bound by the terms of the contract entered into by Eyecare, or even that OFIMA was aware of the contract entered into by Eyecare.  Therefore, while this evidence indicates that a mistake may have been made on Oncology's part, it is simply not sufficient to hold OFIMA to the terms of Eyecare and Oncology's contract.

generally synonymous causes of action[5].  *See Johnson v. Gudmundsson*, 35 F.3d 1104, 1114 n.7 (7th Cir. 1994).  A quasi-contractual claim is established where the defendant has unjustly retained a benefit conferred by the plaintiff contrary to "fundamental principles of justice, equity, and good conscience." *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 678 (Ill. 1989).  Quasi-contractual recovery is independent of any agreement between the parties or the intentions of the parties, but rather is based on the surrounding facts and circumstances.  *Century 21 Castles By King, Ltd. v. First Nat. Bank of Western Springs*, 524 N.E.2d 1222, 1225 (Ill. App. 2 Dist. 1988).  "In fact, the intention of the parties is entirely disregarded." *Village of Bloomingdale v. CDG Enterprises, Inc.*, 752 N.E.2d 1090, 1102 (Ill. 2001).

Recovery on an unjust enrichment cause of action requires that the plaintiff demonstrate that (1) it performed services, (2) the benefit of these services was conferred upon the defendant, and (3) it is unjust for the defendant to retain the benefit without compensating the plaintiff.  *First Nat'l Bank of*

---

[5] Recovery on a quantum meruit claim requires proof that (1) the plaintiff performed a service of benefit to the defendant, (2) the service was performed non-gratuitously, (3) the defendant accepted the service, and (4) there was no contract that prescribed the payment for the service. *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 908 (Ill. 1998).  However, because quantum meruit focuses upon the provision of services, not goods, the Court's discussion will reference only unjust enrichment.

*Springfield v. Malpractice Research, Inc.*, 688 N.E.2d 1179, 1185 (Ill. 1997). Under quasi-contractual theories of recovery, the plaintiff is entitled to recover an amount that is "'just.'" *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 745 (7th Cir. 1990). This is the lower of either the amount that the defendant was unjustly enriched by, or the economic cost to the plaintiff of providing the benefit to the defendant. *Id.*

Oncology has established all of the elements of its unjust enrichment claim against OFIMA. OFIMA does not contest that Oncology conferred a benefit on OFIMA by shipping merchandise to OFIMA, and that OFIMA has not compensated Oncology for this benefit. It would certainly be unjust for OFIMA not to compensate Oncology for this merchandise. OFIMA recognizes that it owes a debt to Oncology, and has, in fact, made payments on these invoices to Oncology. Additionally, OFIMA does not allege that the merchandise was shipped gratuitously by Oncology, and neither party has introduced sufficient evidence to demonstrate that there is a valid contract that governs the shipment of this merchandise. Thus, the only actual dispute is the "just" or "reasonable" amount of recovery to which Oncology is entitled.

Oncology insists, of course, that its list price for the merchandise ordered and received by OFIMA is the ideal starting point for determining the reasonable value of the goods in question. OFIMA counters that the list or invoice price of

merchandise is not necessarily its reasonable value, citing *North American Lighting, Inc. v. Hopkins Mfg. Corp.*, 37 F.3d 1253, 1259 (7th Cir. 1994). But OFIMA's reliance on *North American Lighting* is misplaced.

The parties in *North American Lighting* called on the court to determine the reasonable value of the use of a defective machine by the purchaser from the time the machine was delivered to the purchaser, to the time the purchaser rejected and returned the machine. *Id.* The plaintiff sold a machine used to test automotive light bulbs during their manufacture to the defendant. *Id.* at 1255. The machine, however, provided measurements that at times differed by more than 100% from the known value, and consequently was of only limited use to the purchaser. *Id.* After possessing the machine for about two years, the purchaser returned the machine to the seller, and the court held that this effected a proper revocation of acceptance. *Id.* at 1258-59. The seller, however, counterclaimed on a theory of quantum meruit for the reasonable lease value of the machine during the time that the buyer possessed and used the machine. *Id.* at 1259. The court remanded the case to the district court for consideration of the appropriate rental value in light of the actual rental payments made by other customers and other pertinent factors. *Id.* Thus, this case does not establish that the reasonable value of merchandise is different from the invoice or list price, since

there was no list or invoice price established for the rental value of the machine.

OFIMA claims that the reasonable value of the drugs it received is lower than its list price, because the amount that OFIMA is reimbursed for those drugs by insurance companies and patient co-payments may be less than the list price of that drug. OFIMA asserts that Oncology charged $78.50 for a unit of Anzemet in January and February 2000, but that OFIMA only received $13.26 in total reimbursement from insurance companies and patient co-payments. (Jennetten Aff. at ¶ 12.) Further, OFIMA asserts that "the amount that OFIMA recovered from [a] managed care program for certain drugs sold by [Oncology] to OFIMA was less than the price for the drug stated on the invoices." (*Id.* at ¶ 13.)

Neither of these assertions is relevant to the determination of the reasonable value of the merchandise at issue. None of the submitted invoices list charges for a product named Anzemet, nor do they contain any merchandise for a unit price of $78.50. The invoices at issue are dated March 1, 2000, and later, such that the amount charged by Oncology for different drugs in January and February 2000 is not relevant to this dispute. Further, the reasonable value of the merchandise must be considered with respect to OFIMA, not a third party unrelated to the litigation. The reasonable value to an insurance company or managed care program would only be relevant if that company or program were

itself a defendant in an unjust enrichment action. The amount
that a health care provider recovers from an insurance company or
patient could be influenced by numerous factors unrelated to this
dispute and consequently has no bearing on the outcome.

Finally, OFIMA asserts that the determination of the
reasonable value in a quasi-contractual claim is purely a
question of fact, thereby rendering such a claim inappropriate
for decision on summary judgment, citing *Ellis v. Photo America
Corp.*, 447 N.E.2d 852, 857 (Ill. App. 1 Dist. 1983). Although the
Court disagrees that the *Ellis* case is directly on point, the
Court agrees that determining "just" compensation under the
equitable doctrine of unjust enrichment frequently requires
consideration of numerous factual issues not presently before the
Court[6]. The Court need not resolve this dilemna, however,
because Oncology's recovery can be readily determined under its
account stated theory of recovery. *Shintom America, Inc. v. Car*

---

[6] Oncology insists that the reasonable value of its recovery is
the invoice price of the merchandise ordered and received by
OFIMA. However, the just or reasonable value for recovery under
unjust enrichment is evaluated without reference to the intent of
the parties. It is determined according to the facts and
circumstances of the case as necessary to effect a just
compensation. The reasonable value may be the amount of the
benefit conferred upon OFIMA, or it may be the economic cost to
Oncology to produce the merchandise. Determination of these
amounts may require evaluation, for instance, of the usual and
customary charges, or market price, for this merchandise. The
determination would also possibly require determination of
Oncology's costs to manufacture the merchandise. The guidelines
for recovery under Oncology's account stated claim are much more
clear cut.

*Telephone, Inc.,* No. 92 C 6131, 1994 WL 11663, at \*2 (N.D. Ill.
Jan. 5, 1994) (prohibiting plaintiff from recovering under
multiple theories, noting that "the theories of breach of
contract, unjust enrichment, and account stated 'are merely
different bases for a single recovery.'") (quoting *Ind. Harbor
Belt RR Co. v. American Cyanamid Co.,* 860 F.2d 1441, 1445 (7th
Cir. 1988)).

### 3. Account Stated

"An account stated is an agreement between parties who have
previously conducted monetary transactions that the account
representing the transactions between them is true, and that the
balance is accurate, together with a promise to pay such
balance." *Toth v. Mansell,* 566 N.E.2d 730, 734 (Ill. App. 1
Dist. 1990). The parties' agreement must be a manifestation of
their mutual assent. *Protestant Hospital Builders Club, Inc. v.
Goedde,* 424 N.E.2d 1302, 1306 (Ill. App. 5 Dist. 1981).

An account stated claim may arise where one party renders a
statement of the account to the other, and the receiving party
does not object to the statement within a reasonable period of
time. *Allied Wire Products, Inc. v. Marketing Techniques, Inc.,*
424 N.E.2d 1288, 1296-97 (Ill. App. 1 Dist. 1981). By retaining
the statement without objection, the debtor and creditor are
deemed to have had a meeting of the minds as to the amount owed.
*Eastman Kodak Co v. T-KX-Ray, Ltd,* No. 94 C 3281, 1995 WL 571460,

at *4 (N.D. Ill. Sept. 25, 1995). Thus, unlike a quasi-contractual theory based on the facts and circumstances of the case, recovery by account stated seeks to enforce the intent of the parties in the absence of an express contract[7]. This is an implied in fact contract that seeks to enforce the intent of the parties.

An account stated claim "is merely a form of proving damages for the breach of a promise to pay on a contract." *Dreyer Med. Clinic, S.C. v. Corral*, 591 N.E.2d 111, 114 (Ill. App. 2d Dist. 1992). Additionally, an account stated only determines the amount of the debt, and does not itself create liability. *Sexton v. Brach*, 464 N.E.2d 284, 286 (Ill. App. 3 Dist. 1984). "Assent to an account stated may be shown by payment or part payment of the balance," as shown in a written statement. *In re Marriage of Angiuli*, 480 N.E.2d 513, 518 (Ill. App. 2 Dist. 1985).

---

[7] "[A}lthough there appears to be no Illinois decision in (sic) point, it is generally well settled that an account stated may include claims of indebtedness otherwise barred by the Statute of Frauds." Canadian Ace Brewing v. Swiftsure Beer Serv. Co., 149 N.E.2d 442, 450(Ill. App. 1958). However, Judge Shadur has indicated that the Statute of Frauds may prevent a party from prevailing on an account stated claim. *MHR Corp. v. Robin,* 687 F. supp. 1257 (N.D. Ill. 1988). The *MHR Corp.* case is readily distinguishable from the instant case, however. In *MHR*, a seller sought to enforce a potential purchaser's alleged promise to buy art. *Id.* at 1258. In support of its account stated claim, MHR presented only an invoice it had sent to the purchaser. *Id.* Conversely, in the instant case, OFIMA acknowledges ordering and receiving the goods, made payments on the debt, and attempted to establish a payment plan for the remainder of the debt. In addition, Oncology successfully established the elements of unjust enrichment, which the *MHR* seller was not able to do.

The invoices at issue in this case are dated between March 1, 2000 and May 11, 2000. Neither party has introduced any evidence that OFIMA objected to these invoices prior to the filing of this lawsuit. The fact that OFIMA did not object to these invoices for a period exceeding a year is sufficient evidence that OFIMA assented to the amount stated. In addition, the fact that OFIMA has begun to make payments on the account balance further demonstrates OFIMA's intent to assume liability. Consequently, OFIMA has implied its consent to purchase the merchandise at the price stated in the invoices.

Therefore, OFIMA has implied its consent to purchase the merchandise listed on the invoices for the stated prices, as well as the finance charges, which totals $144,163.14. However, this sum must be reduced by the payments previously made by OFIMA, in the amount of $15,842.54. OFIMA has also introduced evidence of credit memos issued by Oncology to offset the balance by an additional $6,829.64. Although Oncology denies that OFIMA is entitled to these credits, it has failed to present evidence rebutting OFIMA's submission of the credit memos. Thus, OFIMA remains liable to Oncology for a total of $121,490.96. Summary judgment is granted in favor of Oncology in this amount.

## CONCLUSION

For the aforementioned reasons, the Court finds that Oncology has successfully established that it is entitled to recover the outstanding balances in the amount of $121,490.96 from OFIMA. The Court finds that Oncology has failed to establish that it has a valid written contract with OFIMA. Although Oncology has successfully established all of the elements of its unjust enrichment claim against OFIMA, ordinarily, the determination of the reasonable value of Oncology's equitable claim would be better left to a jury to decide. However, Oncology has demonstrated that it is entitled to recover a definitive sum under its account stated theory of recovery.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment be, and the same hereby is, GRANTED. Defendant OFIMA will pay to Plaintiff Oncology the sum of $121,490.96.

May 12, 2003                    ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge

# United States District Court
## Northern District of Illinois
### Eastern Division

Oncology Therapeutics Network

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 01 C 2079

Olympia Fields

☐  Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

☐  Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment against defendant Olympia Fields Internal Medicine Associates , S.C. d/b/a Horizon Healthcare Associates, S.C. is granted. Judgment is entered in the amount of $121,490.96.

Michael W. Dobbins, Clerk of Court

Date: 5/12/2003

Alicia Castillo, Deputy Clerk